## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **MATT HARNEY** | * | **CIVIL ACTION NO.** |
| | * | |
| **VERSUS** | * | **JUDGE:** |
| | * | |
| **ONPATH FEDERAL CREDIT** | * | |
| **UNION f/k/a ASI FEDERAL** | * | **MAGISTRATE JUDGE** |
| **CREDIT UNION** | * | |

## COMPLAINT AND DEMAND FOR JURY TRIAL

### NATURE OF THE ACTION

This is an action asserted by **MATT HARNEY** under Title VII of the Civil Rights Act, 42 U.S.C. § 2000, *et seq.* (hereinafter "Title VII") to correct unlawful discrimination and/or employment practices on the basis of gender and/or sex; under Title VII in response to a hostile work environment, under Title VII in response to quid pro quo sexual harassment; under Title VII due to the retaliation that he was subjected to; under the Louisiana Human Rights Act, La. R.S. 51:2231, *et seq.* (hereinafter the "LHRA") to correct unlawful discrimination and/or employment practices on the basis of gender and/or sex; under the Louisiana Employment Discrimination Act, La. R.S. 23:301, *et seq.* (hereinafter the "LEDA") to correct unlawful discrimination and/or employment practices on the basis of gender and/or sex; under LEDA to correct both hostile work environment and harassment; under La. R.S. 23:967, *et seq.* and/or La. R.S. 23:301, *et seq.* due to the reprisal that he was subjected to; under Louisiana law for defamation; under Louisiana law for intentional infliction of emotional distress; and to provide appropriate relief to **MATT HARNEY**,

who was injured by the discriminatory and wrongful practices set forth herein.

## JURISDICTION AND VENUE

1.

This action is instituted pursuant to the provisions of Federal and Louisiana state law. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction pursuant to the provisions of both Rule 18 of the Federal Rules of Civil Procedure and 28 U.S.C. § 1367.   Additionally, this Honorable Court has pendant jurisdiction over **MATT HARNEY'S** claims based on state law.

2.

This Court has personal jurisdiction over the Defendant since it is domiciled in the Eastern District of Louisiana and most of the acts and omissions of Defendant occurred in the Eastern District of Louisiana.

3.

Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2).   The employment practices alleged to be unlawful were committed within the jurisdiction of this Court and a substantial part of the events or omissions giving rise to the claim occurred in this district.

4.

Venue is also proper in this Court pursuant to 28 U.S.C. § 1391 and 42 U.S.C. § 2000e-5(g).

5.

At all times relevant herein, **MATT HARNEY** worked for Defendant within the Eastern

2

District of Louisiana, performed the functions of his position with Defendant in this district, and was supervised within this district.

## ADMINISTRATIVE REMEDIES

6.

**MATT HARNEY** has satisfied all administrative perquisites for filing suit under Title VII and the Louisiana Employment Discrimination Law.

7.

On August 5, 2019, **MATT HARNEY** filed a Charge of Discrimination against ASI with the Equal Employment Opportunity Commission.   A copy of this Charge of Discrimination is attached hereto as Exhibit "A".   On March 20, 2020 **MATT HARNEY**, through undersigned counsel, received his Notice of Right to Sue letter.   A copy of this Notice of Right to Sue letter is attached hereto as Exhibit "B".

8.

This suit is being filed within ninety (90) days of **MATT HARNEY'S** receipt of the Notice of Right to Sue.

## PARTIES

9.

**MATT HARNEY** is a person of the full age of majority, who at all times relevant hereto was domiciled in the Parish of St. Tammany, State of Louisiana.

10.

Made defendant herein is OnPath Federal Credit Union formerly known as ASI Federal Credit Union (hereinafter "ASI").

3

11.

Each of the acts and omissions complained of in this Complaint were committed by employees of Defendant ASI while in the course and scope of their employment with ASI.

12.

In committing the acts and/or omissions alleged herein, employees of Defendant ASI acted under color of authority and therefore, Defendant ASI is liable for these acts and omissions.

13.

Defendant is justly and truly indebted unto **MATT HARNEY** for all sums to which he is entitled by law in amounts that are reasonable under the premises, punitive damages as allowed by law, penalties as allowed by law, general damages and lost wages as allowed by law, all attorney's fees allowed by law, all court costs and litigation expenses incurred in these proceedings including, but not limited to, expert witness fees, together with legal interest as allowed by law, for all costs of these proceedings, and all other relief to which **MATT HARNEY** is entitled at law or in equity.

## **FACTS**

14.

At all times relevant hereto, Defendant ASI employed **MATT HARNEY**.

15.

At all times relevant hereto, Defendant ASI was an "employer" as defined in all applicable statutes including, but not limited to, 29 U.S.C. § 630 and applicable Louisiana statutes.

16.

**MATT HARNEY** was discriminated against, subjected to disparate treatment, sexually

4

harassed, denied equal opportunity in the terms and conditions of his employment with Defendant ASI, harassed, subjected to actions by Defendants that had a disparate impact on him, and retaliated against under the following facts:

17.

According to its website, Defendant ASI began on the grounds of Avondale Shipyards Inc. in 1961 as Avondale Shipyards Inc, Federal Credit Union to serve blue-collar workers.

18.

Since its founding, Defendant ASI has grown to include almost 64,000 members and extended its financial services across Southeast Louisiana and beyond.

19.

In 2019, Defendant ASI rebranded and changed its name to OnPath Federal Credit Union.

20.

Currently, Defendant ASI has eleven branch locations in the following five parishes: Orleans, Jefferson, Lafourche, and St. Tammany.

21.

**MATT HARNEY** went to work at Defendant ASI in July of 2010 as Director of Operations and he performed the duties of this job very well.

22.

In fact, **MATT HARNEY** performed so well that Defendant ASI gave him additional job duties when it put him in charge of the Facilities department.

23.

Later Defendant ASI also put **MATT HARNEY** in charge of the Security department and

later placed him over the ASI non-profit.

24.

While none of these new positions came with any increase in pay, they did increase **MATT HARNEY'S** responsibilities and he performed the duties relating to these positions very well.

25.

**MATT HARNEY** was not subjected to any discrimination, harassment, retaliation, or other unlawful treatment when he interviewed to be hired by Defendant ASI. However, this quickly changed after he was hired.

26.

During the first month of his employment with Defendant ASI, Minghon Tourne, who was CEO at that time, asked **MATT HARNEY** to help with the Human Resources Department because she had recently fired the head of that department.

27.

**MATT HARNEY** agreed and based upon this request he went to Human Resource's then second-in-command Julie Shultz and discussed with her ASI's hiring strategy because it had been brought to his attention that the process was broken and needed to be addressed. **MATT HARNEY** also asked Ms. Shultz to make sure that all new hires were met at their reporting branch and introduced to the managers and staff on their first day of work with Defendant ASI. The next day as requested, Ms. Shultz met the most recent new hire at the branch to do what had been discussed.

28.

In the subsequent months and years of Minghon Tourne's tenure she would have **MATT**

**HARNEY** work on her property in Covington and Metairie during work hours as well as outside of work hours.   Other times, she would force him to take vacation days so that he could come out to her properties and perform personal work for her.   This was well known at ASI and upon information and belief, the then CFO reported it to Defendant ASI's Board of Directors.

29.

The work that Minghon Tourne made **MATT HARNEY** perform at her properties was very labor intensive labor and included building houses, cutting down trees, and fixing things.

30.

On one occasion she had a contractor deliver several tons of limestone which they put in the wrong place and she forced **MATT HARNEY** to move it to the proper location by hand.   By the time he was done that day he could barely walk.   The pain he experienced the next day was excruciating, and the pain he experienced the third day was even worse.   It was so bad that **MATT HARNEY** was unable to walk down a flight of stairs at the Mandeville branch.

31.

That day **MATT HARNEY** called his then direct supervisor, Will Bienvenu to advise that he had hurt his back and would be going home for the day.   Due to the pain, several employees of ASI had to help him to his car when he left.

32.

Mr. Bienvenu told Minghon Tourne about **MATT HARNEY'S** injury and she immediately called him and told **MATT HARNEY** not to say that he had hurt his back at her property and instead to say that he had hurt it at home.

33.

In addition to forcing him to work at her properties, Minghon Tourne also forced **MATT HARNEY** to work at other properties.   Once such property a private school in New Orleans on whose board Minghon Tourne sat.

34.

On three separate occasions she forced **MATT HARNEY** go to that private school during Defendant ASI's regular business hours and work on different projects as well as advise them as to how they should handle certain facility related matters.   One such facility matter involved leaking AC ductwork.   Another matter was a bathroom that was being remodeled and the third involved landscaping.

35.

Minghon Tourne did not make any female employees of Defendant ASI perform personal work for her during work hours, at her home, or use their vacation days to perform such work. Likewise, upon information and belief, no one else at Defendant ASI made female employees perform personal work for them during work hours, at their home, or use vacation days in order to perform such work.

36.

Unfortunately, the discrimination that Defendant ASI subjected **MATT HARNEY** to was only beginning.   Throughout the time that she was the CEO of Defendant ASI, Minghon Tourne sexually harassed **MATT HARNEY**, treated him differently based upon his gender, and created a hostile work environment.

8

37.

This sexual harassment and discrimination as well as the hostile work environment that they created included, but is not limited to, the following actions which lasted for the entire time that Minghon Tourne was CEO and **MATT HARNEY** worked for her:

-Minghon Tourne would repeatedly tell **MATT HARNEY** the sexual acts that she would to do to him;

-Minghon Tourne repeatedly told **MATT HARNEY** that they should run away together even though he was married;

-Minghon Tourne would describe her sex life to **MATT HARNEY** in explicit detail;

38.

**MATT HARNEY** objected to and complained about Minghon Tourne's discriminatory and harassing treatment.

39.

Defendant ASI ignored **MATT HARNEY'S** complaints and continued discriminating against and harassing him even though she knew it was wrong, improper, and unlawful.   In fact, Minghon Tourne even told him on multiple occasions that her misconduct towards him and the way she mistreated him constituted sexual harassment.

40.

When Minghon Tourne got closer to retirement she hired a consultant and his company to come in and restructure the company and help with strategic planning.   She used this process to take away some of **MATT HARNEY** job duties and some of the departments that he oversaw.

9

41.

**MATT HARNEY** reluctantly gave up Operations even though he enjoyed supervising that department.    After doing so, Brian Menard became his direct supervisor as Vice President of Operations.

42.

Upon information and belief, duties and responsibilities were taken away from **MATT HARNEY** and he was forced to give up his supervision of the Operations Department at Defendant ASI because he objected to the way that Minghon tourney treated him and he told her to stop discriminating against him and harassing him.

43.

Minghon Tourne retaliated against **MATT HARNEY** and continued to mistreat him, harass him, retaliate against him, and discriminate against him for almost six (6) years until she retired.    When she retired, Minghon Tourne agreed to stay on at Defendant ASI in a consulting capacity for the next CEO, Sonya Jarvis.

44.

Sonya Jarvis took over as President and CEO of Defendant ASI in May of 2016 and continued the mistreatment, harassment, retaliation, and discrimination against **MATT HARNEY** that Minghon Tourne had begun and continued for years.

45.

The first such incident of mistreatment, sexual discrimination, harassment, and retaliation with Sonya Jarvis occurred when **MATT HARNEY** walked into her office to discuss a project

and she made a comment about what he was wearing that was inappropriate and made him uncomfortable.

46.

Unfortunately, the mistreatment, discrimination, sexual harassment, and retaliation got worse. Sonya Jarvis started setting up more frequent meetings that only she and **MATT HARNEY** would attend. In many of these meetings she would tell him that she had sexual fantasies about him. She also repeatedly told him about the sexual things she would do at night while she thought about him. She also repeatedly told him about the sexual acts that she wanted to perform with him. Sonya Jarvis continued this unlawful treatment of **MATT HARNEY** even though he told her that it made him uncomfortable and requested that she stop.

47.

This unlawful conduct continued throughout the time that Sonya Jarvis served as President and CEO of Defendant ASI and only worsened over time.

48.

One example of this unlawful conduct occurred when Sonya Jarvis, Brian Menard, and **MATT HARNEY** went next door to eat dinner, have a few drinks, and talk about work. As the evening went on Sonya Jarvis started rubbing **MATT HARNEY'S** leg and then put her hand on his crotch. **MATT HARNEY** let her know that her conduct was unacceptable and that she was making him uncomfortable. Everyone left shortly afterwards.

49.

The next day Sonya Jarvis called **MATT HARNEY** into her office and told him that he needed to apologize to Brian Menard because he may have gotten the wrong idea and thought that

11

**MATT HARNEY** was hitting on her.   As strange as her request was, **MATT HARNEY** went to Mr. Menard's office and apologized because Sonya Jarvis was his boss, she controlled his employment with Defendant ASI, and he wanted to keep his job.   Mr. Menard acknowledged that he saw Sonya sexually harass **MATT HARNEY** the night before and asked why he was apologizing.   **MATT HARNEY** told Mr. Menard that Sonya told **MATT HARNEY** to apologize to him, but Mr. Menard said that **MATT HARNEY** had nothing to apologize for and that Sonya needed to apologize to both of them.

50.

Sonya Jarvis never apologized.   Instead, Sonya Jarvis continued the harassment and discrimination against **MATT HARNEY** and retaliated against him by removing Mr. Menard as his direct supervisor and made him report directly to her.

51.

After doing so, Sonya Jarvis would often tell **MATT HARNEY** that if he had sexual relations with her then she would make him the next Vice President of Defendant ASI.

52.

She also told **MATT HARNEY** on multiple occasions that he would be punished if he told anyone about the discrimination, harassment, and retaliation that she subjected him to and this punishment included the loss of his job with Defendant ASI.

53.

Around this time, Sonya Jarvis also looked for and talked to **MATT HARNEY** about going to an out-of-state conference on Defendant ASI's behalf so they could be alone together.

54.

Sonya Jarvis continued to harass and discriminate against **MATT HARNEY** by setting up private gmail accounts for each of them to use so she could continue to discriminate against and sexually harass **MATT HARNEY** when he was away from the office.   Using the gmail accounts that she set up, Sonya Jarvis sent **MATT HARNEY** many sexually explicit emails and texts.

55.

Even though **MATT HARNEY** continued to reject her sexual advances, Sonya Jarvis never stopped harassing him and discriminating against him and treating him differently from other employees of Defendant ASI who are outside of his protected class.

56.

The almost decade long discrimination, sexual harassment, and retaliation that Defendant ASI through successive CEOs subjected him to caused **MATT HARNEY** harm at both work and home.   Because he could not get away from the years of mistreatment at work, **MATT HARNEY** told his wife multiple times that that they should just move back to Texas.   His wife did not understand why he kept saying this.   **MATT HARNEY** finally told her that nothing had changed after Sonya Jarvis took over for Minghon Tourne and that things had actually gotten worse.

57.

The stress and wrongful conduct that Defendant ASI subjected **MATT HARNEY** to worsened to the point that he ended up in the hospital with a heart attack in December of 2016 and spent the next day and a half in the hospital.

58.

After his hospital stay, **MATT HARNEY** continued to complain about the unlawful

conduct and began working remotely at the branches mostly on the northshore of Lake
Pontchartrain in an attempt to avoid the discrimination, sexual harassment, and retaliation to which
Sonya Jarvis had been subjecting him to for years and to which she continued to subject him.

59.

Unfortunately Sonya Jarvis responded to this effort by worsening the discrimination,
sexual harassment, and retaliation by trying to find out which branch **MATT HARNEY** was
working from, appearing at that branch to try and see him, and discriminating against, sexually
harassing, and retaliating against him at the branch.

60.

Because of this continued discrimination, sexual harassment, and retaliation, **MATT
HARNEY** had no choice but to work from home as much as possible.

61.

Defendant ASI retaliated against **MATT HARNEY** for complaining about the
discrimination, sexual harassment, and retaliation to which it had subjected him in multiple ways
including, but not limited to falsely criticizing his job performance and giving him evaluations that
negatively impacted his career and future at ASI.

62.

The discrimination, sexual harassment and retaliation that Defendant ASI subjected
**MATT HARNEY** to and which went on continuously since 2010 continued throughout 2017,
2018, and 2019.

63.

Finally, on or about January 22, 2019 a lawyer who represented to **MATT HARNEY** that

14

she was retained by Defendant ASI's supervisory committee contacted him to inform him that they were conducting an investigation into hiring/employment practices and all of the restructuring at ASI.

64.

The attorney asked **MATT HARNEY** to meet her at her office because she had some questions for him.   When Sonya Jarvis discovered that **MATT HARNEY** would be attending this meeting, she told him to lie and deny that she had discriminated against him, sexually harassed him, created a hostile work environment, and retaliated against him.   She again threatened **MATT HARNEY'S** job at Defendant ASI if he told the truth about her unlawful conduct towards him.

65.

**MATT HARNEY** ended up meeting with the attorney for more than three (3) hours. Some of the questions he was asked related to the sexual harassment that Sonya Jarvis subjected him to when Brian Menard was present and he confirmed that it happened and that Sonya told him to apologize to Mr. Menard.   However, due to the threat from Sonya, **MATT HARNEY** was unable to provide complete details about everything that he had been subjected to at ASI, but he confirmed that unlawful conduct had been directed at him.

66.

Unfortunately, nothing changed following this meeting in January 2019 and the discrimination, sexual harassment, and retaliation that Defendant ASI subjected **MATT HARNEY** to continued.

67.

As a result of the years-long continuous and ongoing discrimination, sexual harassment,

and retaliation, as well as the hostile work environment this unlawful conduct created, **MATT HARNEY'S** wife and he agreed that he would try to find another job.

68.

**MATT HARNEY** attempted to do so and had multiple interviews because of his resume and qualifications.   However, upon information and belief, someone at Defendant ASI retaliated against him by preventing him from getting a job with many of the potential employers with whom he interviewed by making false statements about him to these potential employers.   **MATT HARNEY** discovered that Defendant ASI made these false statements about him after Defendant ASI wrongfully terminated him and he was forced to find another job.

69.

In addition to violating the law, the discriminatory, harassing, retaliatory, and defamatory acts of the CEOs at Defendant ASI violated company policies.   Specifically, Defendant ASI had policies in place during **MATT HARNEY'S** employment that banned offensive sexual remarks, sexual advances, flirtations, or requests for sexual favors.

70.

Defendant ASI also had policies against discrimination based upon an employee's gender.

71.

Most importantly, Defendant ASI had policies against retaliating against an employee, threatening to punish an employee, and conditioning an employee's advancement with the company on their decision to accept sexual advances and their reporting of the sexual advances.

72.

All of these policies apply to supervisors and managers such as Minghon Tourne and

Sonya Jarvis.   However, this did not prevent Minghon Tourne and Sonya Jarvis from continually violating these policies and the law over the almost ten (10) years that **MATT HARNEY** worked for Defendant ASI.

73.

After informing Defendant ASI of the unlawful conduct that its CEOs directed at him, **MATT HARNEY'S** employment with Defendant ASI changed and the conditions and hostile work environment to which he was subjected worsened.

74.

This retaliation and discrimination that Defendant ASI subjected **MATT HARNEY** to culminated with his wrongful termination by Defendant ASI on June 13, 2019.   This termination continued the years-long discriminatory treatment that Defendant ASI subjected **MATT HARNEY** to as well as the years-long retaliation that Defendant ASI subjected him to for complaining about the unlawful treatment that ASI subjected him to, rejecting the sexual advances to which he was subjected, and/or his reporting the discrimination and sexual harassment to which ASI subjected him.

75.

Thus, the prevalent culture within Defendant ASI encouraged, tolerated, and turned a blind eye towards discrimination, sexual harassment, retaliation, and other wrongful conduct because employment decisions were based upon discriminatory factors.   This culture allowed the CEOs of Defendant ASI to violate its own policies and mistreat, discriminate against, and retaliate against **MATT HARNEY** for years.   It also created an environment where the CEO could make employment decisions and take actions based upon discriminatory conduct rather than

considerations of an employee's qualifications, tenure, experience, supervision, education, or other lawful factors.

76.

In summary, Defendant ASI has continuously subjected **MATT HARNEY** to discrimination, retaliation, mistreatment, and harassment for almost ten (10) years including after he complained of this unlawful conduct to Defendant ASI's attorneys.

77.

**MATT HARNEY** asserts that Defendant ASI treated him differently and terminated his employment because of his gender/sex, that this unlawful conduct created a hostile work environment, and that the reasons given for the actions taken against him were pretextual.

78.

**MATT HARNEY** timely filed a Charge of Discrimination against Defendant ASI with the U.S. Equal Employment Opportunity Commission through its New Orleans field office on or about August 5, 2019.   See Exhibit "A".

79.

On or about March 12, 2020, the EEOC placed in the mail a Notice of Right to Sue letter entitling **MATT HARNEY** to file a civil action against Defendant ASI within 90 days of his receipt of said notice.   See Exhibit "B".

80.

**MATT HARNEY** has met and satisfied all procedural and administrative remedies precedent to the commencement of this lawsuit.

## CAUSES OF ACTION

## TITLE VII INTENTIONAL AND/OR DISPARATE TREATMENT CAUSE OF ACTION

81.

**MATT HARNEY** re-alleges and incorporates by reference each of the allegations set forth in Paragraphs 1-80 above, as if fully set forth herein.

82.

Defendant ASI discriminated against **MATT HARNEY** based upon his gender/sex with regard to its treatment of him in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000, *et seq.*, as amended since it treated female employees differently than it treated him and/or its actions had a disparate impact on **MATT HARNEY** as a male employee entitled to protections under Title VII.

83.

Thus, Defendant ASI intentionally discriminated against **MATT HARNEY** and/or Defendant ASI's conduct had a disparate impact on **MATT HARNEY** in violation of Title VII.

84.

The effect of the practices complained of herein has been to unlawfully deprive **MATT HARNEY** of equal employment opportunities by denying him employment and/or employment opportunities because of his gender/sex.

85.

As a direct result of Defendant ASI'S discriminatory conduct, **MATT HARNEY** has sustained, is entitled to recover, and seeks to recover all general damages, compensatory damages, actual damages, liquidated damages, punitive damages, and lost wages that he proves and is

entitled to recover pursuant to Title VII.

86.

Additionally, due to Defendant ASI'S discriminatory conduct, **MATT HARNEY** is

entitled to recover and seeks to recover his reasonable attorney's fees and costs incurred in this

matter pursuant federal law including, but not limited to, 29 U.S.C. §§ 216(b) and 626(b).

## TITLE VII SEXUAL HARASSMENT CAUSE OF ACTION

87.

**MATT HARNEY** re-alleges and incorporates by reference each of the allegations set forth

in Paragraphs 1-80 above, as if fully set forth herein.

88.

As described in the preceding paragraphs, **MATT HARNEY** is a member of a protected

class who was subject to sex-based harassment, discrimination, and retaliation in the workplace at

Defendant ASI.

89.

Defendant ASI continuously sexually harassed **MATT HARNEY** for almost ten (10)

years based upon his gender/sex in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000,

*et seq.*

90.

As a direct result of Defendant ASI'S sexual harassment, **MATT HARNEY** has sustained,

is entitled to recover, and seeks to recover all general damages, compensatory damages, actual

damages, liquidated damages, punitive damages, and lost wages that he proves and is entitled to

recover pursuant to Title VII.

91.

Additionally, due to Defendant ASI'S sexual harassment, **MATT HARNEY** is entitled to recover and seeks to recover his reasonable attorney's fees and costs incurred in this matter pursuant federal law including, but not limited to, 29 U.S.C. §§ 216(b) and 626(b).

**TITLE VII HOSTILE WORK ENVIRONMENT CAUSE OF ACTION**

92.

**MATT HARNEY** re-alleges and incorporates by reference each of the allegations set forth in Paragraphs 1-80 above, as if fully set forth herein.

93.

As described in the preceding paragraphs, **MATT HARNEY** is a member of a protected class who was subjected to sexual harassment, gender based discrimination, and retaliation in the workplace for almost ten (10) years at Defendant ASI.

94.

This unlawful gender based conduct affected a term, condition, and/or privilege of **MATT HARNEY'S** employment by causing him emotional distress and anxiety.

95.

Defendant ASI'S conduct was so severe, continuous and pervasive that it created a hostile work environment and **MATT HARNEY** was forced to seek other employment before and after Defendant ASI wrongfully terminated him.

96.

Defendant ASI knew about the hostile work environment that it subjected **MATT HARNEY** to, but Defendant ASI neither took reasonable remedial measures to prevent nor

corrected the wrongful behavior.

97.

Defendant ASI'S actions, through its employees and agents, were taken with malice and reckless disregard for **MATT HARNEY'S** rights.

98.

As a direct result of the hostile work environment that Defendant ASI created and/or allowed to exist, **MATT HARNEY** has sustained, is entitled to recover, and seeks to recover all general damages, compensatory damages, actual damages, liquidated damages, punitive damages, and lost wages that he proves and is entitled to recover pursuant to Title VII.

99.

Additionally, due to the existence of this hostile work environment, **MATT HARNEY** is entitled to recover and seeks to recover his reasonable attorney's fees and costs incurred in this matter pursuant federal law including, but not limited to, 29 U.S.C. §§ 216(b) and 626(b).

## TITLE VII RETALIATION CAUSE OF ACTION

100.

**MATT HARNEY** re-alleges and incorporates by reference each of the allegations set forth in Paragraphs 1-80 above, as if fully set forth herein.

101.

**MATT HARNEY** engaged in protected activity, by opposing the disparate treatment, intentional discrimination, sexual harassment, and hostile work environment as described in the preceding paragraphs.

22

102.

After **MATT HARNEY** lodged his complaints, Defendant ASI through Minghon Tourne, Sonya Jarvis, and others retaliated against him by engaging in a series of materially adverse actions against **MATT HARNEY** that would have dissuaded a reasonable person from complaining of discrimination including, but not limited to, the threats to his employment with Defendant ASI.

103.

Defendant ASI took adverse actions against **MATT HARNEY** because of his protected activities.

104.

Defendant ASI's actions were taken with malice and reckless disregard for **MATT HARNEY'S** complaints and right to compete with those outside of his protected class.

105.

As a direct result of Defendant ASI's retaliation, **MATT HARNEY** has sustained, is entitled to recover, and seeks to recover all general damages, compensatory damages, actual damages, liquidated damages, punitive damages, and lost wages that he proves and is entitled to recover pursuant to Title VII.

106.

Additionally, due to this retaliation, **MATT HARNEY** is entitled to recover and seeks to recover his reasonable attorney's fees and costs incurred in this matter pursuant federal law including, but not limited to, 29 U.S.C. §§ 216(b) and 626(b).

## LHRA GENDER/SEX CAUSE OF ACTION

107.

**MATT HARNEY** re-alleges and incorporates by reference each of the allegations set forth in Paragraphs 1-80 above, as if fully set forth herein.

108.

Defendant ASI harassed and discriminated against **MATT HARNEY** based upon his gender/sex with regard to its treatment of him in violation of La. R.S. 51:2231, *et seq.*, as amended since it treated female employees differently than it treated him and/or its actions had a disparate impact on **MATT HARNEY** as a male employee entitled to protections under La. R.S. 51:2231, *et seq.*

109.

Thus, Defendant ASI intentionally harassed and discriminated against **MATT HARNEY** and/or Defendant ASI'S conduct had a disparate impact on **MATT HARNEY** in violation of La. R.S. 51:2231, *et seq.*

110.

The effect of the practices complained of herein has been to unlawfully deprive **MATT HARNEY** of equal employment opportunities by denying him employment and/or employment opportunities because of his gender/sex.

111.

Defendant ASI's conduct lasted so long and was so severe, continuous and pervasive that it created a hostile work environment and Defendant ASI ultimately wrongfully terminated **MATT HARNEY'S** employment.

24

112.

As a direct result of Defendant ASI'S harassing and discriminatory conduct, **MATT HARNEY** has sustained, is entitled to recover and seeks to recover all general damages, compensatory damages, actual damages, liquidated damages, punitive damages, and lost wages that he proves and is entitled to recover pursuant to La. R.S. 51:2231, *et seq.*

113.

Additionally, due to Defendant ASI'S harassing and discriminatory conduct, **MATT HARNEY** seeks to recover all attorney's fees and costs to which she is entitled pursuant to La. R.S. 51:2231, *et seq.*

**LEDA GENDER/SEX CAUSE OF ACTION**

114.

**MATT HARNEY** re-alleges and incorporates by reference each of the allegations set forth in Paragraphs 1-80 above, as if fully set forth herein.

115.

Defendant ASI harassed and discriminated against **MATT HARNEY** based upon his gender/sex with regard to its treatment of him in violation of La. R.S. 23:301, *et seq.*, as amended since it treated female employees differently than it treated her and/or its actions had a disparate impact on **MATT HARNEY** as a male employee entitled to protections under La. R.S. 23:301, *et seq.*

116.

Thus, Defendant ASI intentionally harassed and discriminated against **MATT HARNEY** and/or Defendant ASI'S conduct had a disparate impact on **MATT HARNEY** in violation of La.

R.S. 23:301, *et seq.*

117.

The effect of the practices complained of herein has been to unlawfully deprive **MATT HARNEY** of equal employment opportunities by denying him employment and/or employment opportunities because of his gender/sex.

118.

Defendant ASI'S conduct lasted so long was so severe, continuous and pervasive that it created a hostile work environment Defendant ASI ultimately wrongfully terminated **MATT HARNEY'S** employment.

119.

As a direct result of Defendant ASI'S harassing and discriminatory conduct, **MATT HARNEY** has sustained, is entitled to recover and seeks to recover all general damages, compensatory damages, actual damages, liquidated damages, punitive damages, and lost wages that he proves and is entitled to recover pursuant to La. R.S. 23:301, *et seq.*

120.

Additionally, due to Defendant ASI'S harassing and discriminatory conduct, **MATT HARNEY** seeks to recover all attorney's fees and costs to which he is entitled pursuant to La. R.S. 23:301, *et seq.*

**STATE LAW RETALIATION CAUSES OF ACTION**

121.

**MATT HARNEY** re-alleges and incorporates by reference each of the allegations set forth in Paragraphs 1-80 above, as if fully set forth herein.

26

122.

Defendant ASI is liable to **MATT HARNEY** under LEDA and/or La. R.S. 23:967, *et seq.* as described in the preceding paragraphs.

123.

As a direct result of Defendant ASI'S harassing, discriminatory, and/or retaliating conduct, **MATT HARNEY** has sustained, is entitled to recover and seeks to recover all general damages, compensatory damages, actual damages, liquidated damages, punitive damages, and lost wages that he proves and is entitled to recover pursuant to 29 U.S.C. § 206, *et seq.*

124.

Additionally, due to Defendant ASI'S harassing, discriminatory, and/or retaliating conduct, **MATT HARNEY** seeks to recover all attorney's fees and costs to which he is entitled pursuant law.

## DEFAMATION CAUSE OF ACTION

125.

**MATT HARNEY** re-alleges and incorporates by reference each of the allegations set forth in Paragraphs 1-80 above, as if fully set forth herein.

126.

During and after its employment of **MATT HARNEY**, Defendant ASI made false, misleading, and defamatory statements about him, his alleged criminal acts, and his job performance.

127.

Among the defamatory statements made by Defendant ASI were the false statements made

27

after his employment with Defendant ASI terminated on June 13, 2019 that **MATT HARNEY** violated company policies regarding conflicts of interest and committed a crime.

128.

Upon information and belief, Defendant ASI also made false statements about **MATT HARNEY** to potential employers both during and after the termination of his employment with Defendant ASI on June 13, 2019.   **MATT HARNEY** did not learn about the existence of these false statements until after his employment with Defendant ASI ended.

129.

Defendant ASI knew or should have known that the statements made about **MATT HARNEY** were false and defamatory.

130.

Moreover, Defendant ASI knew or should have known that the statements made about **MATT HARNEY** violating company policy and/or committing a crime were false and defamatory.

131.

These defamatory statements, by their very nature, injured or tended to injure **MATT HARNEY'S** personal and/or professional reputation.

132.

Therefore, these statements are defamatory per se.

133.

Even though the false statements made about him by Defendant ASI are defamatory per se, **MATT HARNEY** can establish all elements of his defamation claim.

28

134.

Employees of Defendant ASI made these false, misleading, and defamatory statements about **MATT HARNEY** while within the course and scope of their employment; therefore, Defendant ASI is vicariously liable for the conduct of these employees as set forth herein and all damages that flow therefrom.

135.

As a direct result of the false, misleading, and defamatory statements that Defendant ASI made about him, **MATT HARNEY** has sustained serious damages and is entitled to recover and seeks to recover these damages which include, but are not limited to lost earnings; lost business opportunities; harm to his business and personal reputations; severe mental anguish and emotional distress, and all other damages that will be proven at the trial of this matter.

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CAUSE OF ACTION

136.

**MATT HARNEY** re-alleges and incorporates by reference each of the allegations set forth in Paragraphs 1-80 above, as if fully set forth herein.

137.

The actions of Defendant ASI as set forth herein lasted for years and were deliberate, outrageous, intentional and anticipated to cause emotional distress on the part of **MATT HARNEY**.

138.

Therefore, the actions by the Defendant complained of herein created a cause of action in favor of **MATT HARNEY** and against Defendant under Louisiana law pursuant to the tort of

intentional infliction of emotional distress.

139.

The cumulative nature of everything above has caused **MATT HARNEY** tremendous physical and emotional problems.   These physical and emotional problems include, but are not limited to the heart attack that **MATT HARNEY** suffered due to the stress and distress that Defendant ASI's conduct caused him.

140.

As a direct result of Defendant ASI'S conduct, **MATT HARNEY** has sustained, is entitled to recover, and seeks to recover damages for emotional distress, humiliation, embarrassment, severe mental anguish, distress, physical pain and suffering, loss of enjoyment of his personal and professional lives, damage to his personal and professional reputations, past medical expenses, lost wages, loss of employment related benefits, and other such damages as will be more fully shown at the trial of this matter sustained as a result of this conduct..

141.

**MATT HARNEY** is entitled to and demands a jury trial on all issues and claims set forth herein.

**WHEREFORE**, Plaintiff **MATT HARNEY** prays for trial by jury and, after due proceedings are had that there be judgment herein in his favor and against Defendant **ONPATH FEDERAL CREDIT UNION f/k/a ASI FEDERAL CREDIT UNION** for all such sums as are reasonable in the premises, punitive damages as allowed by law, penalties as allowed by law, general damages, lost wages, attorney's fees, legal interest thereon from the date of judicial demand, all costs, and all such other relief afforded at law or in equity.

**RESPECTFULLY SUBMITTED:**

**KEEGAN, JUBAN, LOWE
& ROBICHAUX, LLC**

 /s/David A. Lowe
David A. Lowe, LSBA No. 24529
5555 Hilton Avenue
Suite 205
Baton Rouge, Louisiana 70808
Telephone: (225) 364-3600
Facsimile: (225) 364-3608
**ATTORNEYS FOR PLAINTIFF
MATT HARNEY**